# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF VIRGINIA
### Newport News Division

| | |
|---|---|
| In re: Marsh Hawk Golf Club, LLC, <br><br> Debtor. | Case Number 10-50632 <br> Chapter 11 |
| In re: Ford's Colony Country Club, Inc., <br><br> Debtor. | Case Number 10-50633 <br> Chapter 11 |

## AGREED INTERIM ORDER AUTHORIZING DEBTORS' USE OF CASH COLLATERAL

Upon the *Motion For Authority to Use Cash Collateral* [D.E. 3] (the "***Motion***") filed by Marsh Hawk Golf Club, LLC ("Marsh Hawk"), and Ford's Colony Country Club, Inc. ("FCCC"), the above-captioned debtors and debtors-in-possession (the "***Debtors***"), seeking an interim order (the "***Interim Order***") authorizing Debtors pursuant to Rules 4001(b) and 4001(c)(1) of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***") to (i) use Cash Collateral (defined below) of Prudential Industrial Properties, LLC (the "***Lender***"), and (ii) grant (x) the Replacement Lien, and (y) the Superpriority Claim (defined below) to Lender to the extent Lender's Collateral suffers a diminution in value because of Debtors' use of Cash Collateral; the interim hearing having been held on April 5, 2010 (the "***Interim Hearing***"); and upon all pleadings filed with the Court and the record at the Interim Hearing; and after due deliberation and consideration and sufficient cause appearing therefor;

Ross C. Reeves (VSB No. 13628)
Laura C. Pyle (VSB No. 73338)
WILLCOX & SAVAGE, P.C.
One Commercial Place, Suite 1800
Norfolk, Virginia 23510
757-628-5500 (T)
757-628-5566 (F)
*Proposed Counsel for the Debtors*
I-936846.4

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS:**

A. <u>Commencement of the Case</u>. On April 1, 2010, (the "***Petition Date***"), Debtors filed their voluntary petitions (the "***Petition***") under Chapter 11 of Title 11 of the United States Code (the "***Bankruptcy Code***"). Debtors continue to operate their businesses and manage their assets as debtors in possession under 11 U.S.C. §§ 1107 and 1108.

B. <u>No Creditors' Committee</u>. The United States Trustee (the "***UST***") has not yet appointed a creditors' committee in this case. If the UST subsequently appoints a creditors' committee, it shall be hereinafter referred to as the "***Committee***."

C. <u>Jurisdiction and Venue</u>. This Court has subject matter jurisdiction over these proceedings, the parties, and property affected hereby under 28 U.S.C. §§ 157(b) and 1334. This proceeding is a core matter under 28 U.S.C. § 157(b). Venue is proper in this Court under 28 U.S.C. §§ 1408 and 1409.

D. <u>Notice.</u> Debtors served the Notice of the Interim Hearing [D.E. 6], by electronic or U.S. mail to: (i) counsel to Lender; (ii) all parties required to be served under Bankruptcy Rule 1007(d); (iii) all creditors known to have a claim on Debtors' cash collateral; and (iv) the UST. Such notice satisfies Bankruptcy Rule 4001(b).

E. <u>Prepetition Indebtedness and Security Therefor</u>. Prudential's Loan Documents provide generally as follows:

    a) Lender has extended to Debtors certain prepetition financing and other financial accommodations, including:

        (i) a loan in the original principal amount of $18,000,000.00, evidenced by that certain Promissory Note, dated December 26, 2006, made by Marsh Hawk, as amended by that certain First Amendment to Promissory Note dated as of June 1, 2007 (collectively, the "Note") (The Note was originally payable to Textron Financial Corporation, but a 97.25% interest in the Note was subsequently assigned by Textron to Lender.);

(ii) that certain Deed of Trust, Security Agreement and Fixture Filing, dated December 26, 2006, made by Marsh Hawk, as grantor, and recorded in the real property records of James City County, Virginia as Instrument No. 060031479 (the "Deed of Trust");

(iii) that certain Assignment of Lease, Rents and Contracts, dated December 26, 2006, made by Marsh Hawk, as assignor, and recorded in the real property records of James City County, Virginia as Instrument No. 060031480 (the "Assignment");

(iv) that certain Security Agreement, dated December 26, 2006, executed by Marsh Hawk, as debtor (the "MH Security Agreement");

(v) certain Non-Recourse Guaranty dated as of December 26, 2006, executed by FCCC, as guarantor (the "Non-Recourse Guaranty"); and

(vi) that certain Security Agreement (Liquor License), dated December 26, 2006, executed by FCCC, as debtor (the "FCCC Security Agreement," collectively with the Note, the Deed of Trust, the Assignment, the MH Security Agreement, the Non-Recourse Guaranty, and all other documents securing the Loan, the "***Lender Loan Documents***").

b) The current amount the Lender claims under the Amended Note is $17,050,564 in principal as of April 2, 2010, plus accrued and unpaid pre-petition interest of $619,463.34 (which includes interest at the marginal default rate of 5% beginning on January 1, 2010), plus fees and other lawful costs and charges, and a yield maintenance claim in the approximate amount of $4,602,475.27, which shall hereinafter be referred to as the "***Outstanding Amount***." For purposes of this Interim Order, the term "***Prepetition Indebtedness***" shall mean and include, without duplication, the Outstanding Amount and any other amounts or obligations due and owing under the Lender Loan Documents.

c) To secure the Prepetition Indebtedness, under the Lender Loan Documents, Debtors granted to Lender liens and security interests (the "***Prepetition Liens***") on and in substantially all Marsh Hawk Golf Club, LLC's real and personal property (the "***Collateral***"), including cash and cash equivalents, and rents, profits, and proceeds of the Collateral (the "***Cash Collateral***"), as

well as specific assets of Ford's Colony Country Club, Inc.

F. <u>Necessity of Financing and Use of Cash Collateral</u>. Debtors' ability to finance their operations requires access to Lender's Cash Collateral, the absence of which would immediately and irreparably harm Debtors, their estates, and their creditors. Permitting Debtors to use Cash Collateral will allow Debtors to continue to operate their businesses and preserve their business relationships with vendors, suppliers, and customers and to satisfy other working capital and operational, financial, and general corporate needs. Permitting Debtors to use Cash Collateral will preserve the estates' going concern value, which will enable Debtors to maximize recoveries for all parties in interest.

G. <u>Property of the Estate</u>. Each item of Cash Collateral constitutes property of Debtors' respective estates.

**THEREFORE, IT IS HEREBY ORDERED THAT:**

1. The Motion is granted as set forth in this Interim Order. Any objections to the Motion that have not been withdrawn, waived, or settled are hereby denied and overruled. This Interim shall become effective immediately upon its entry.

I-936846.4

## AUTHORIZING USE OF CASH COLLATERAL

2. Debtors are authorized to use Cash Collateral until the Termination Date (defined below) solely to fund the types and corresponding amounts (subject to permitted variances) of itemized expenditures contained in the budget attached hereto as Exhibit "A" (the "**Budget**"). Debtors' actual cash disbursements for such period shall not exceed the total amount for such period by more than 5%. Through the Termination Date, Lender and Debtors may, in their sole discretion, agree to increase cash disbursements in the Budget, and upon written agreement by Lender to modify the Budget, Debtors will be authorized to use Cash Collateral in such amount without further Court order. Notwithstanding any term herein to the contrary, Debtors shall not use Cash Collateral to pay (i) any expenses not expressly set forth in the Budget, whether or not such items are similar to the expense categories in the Budget; (ii) any obligations or debts arising before the Petition Date (unless otherwise ordered by the Court); or (iii) any fees or expenses of any party, including Debtors or the Committee; *provided, however*, that the reserve for professional fees may be set aside but not distributed (the "**Prohibited Expenses**").

3. <u>Termination of Use of Cash Collateral.</u>  Debtors' authority to use Cash Collateral, absent further Court order or Lender's written consent, shall automatically expire upon the earlier of: (i) the hearing on the motion to enter a final order authorizing Debtors' use of Cash Collateral; (ii) the conversion of the case to Chapter 7 or dismissal of the case or the filing of a motion or application for the same; (iii) the appointment of a trustee; or (iv) on motion of any party in interest upon (A) Debtors' failure to comply with the Budget; (B) Debtors' failure to comply with any provision of this Interim Order; or (C) the entry of any order reversing, reversing, staying, modifying, supplementing, or amending this Interim Order (the occurrence of any of the foregoing shall be an "***Event of Default***").  Debtors shall have three business days to cure an Event of Default (the "***Cure Period***").  Each Event of Default shall be known as the "***Termination Date***."

4. <u>Reporting Requirements.</u>  Debtors shall continue to comply with existing reporting requirement under the Lender Loan Documents.  Further, on Wednesday of each week, beginning with the first Wednesday after entry of this Interim, Debtors shall provide Lender and the UST with a written report for (i) all Cash Collateral in their possession, custody, or control, including the sources thereof, (ii) any Cash Collateral expended and the purposes for which it was expended through Wednesday of the prior week, (iii) a variance report showing actual expenditures and receipts for each line item versus line items in the Budget, and (iv) further information that Lender reasonably requests upon reasonable notice to Debtors' counsel.  Debtors shall also identify, track, and account for the proceeds of any Cash Collateral created after the Petition Date, which shall also subject to the Replacement Lien (defined herein).

5.	Debtors shall not (i) compromise, adjust, or modify the amount of any of Debtors' accounts receivable (by way of discount, offset, or otherwise) or (ii) sell any item of Cash Collateral outside the ordinary course of business or ordinary business terms without Lender's written consent or Court approval issued after notice to Lender and an opportunity for a hearing.

## **ADEQUATE PROTECTION**

I-936846.4

6. *Replacement Lien.* As adequate protection for Cash Collateral expended pursuant to this Interim Order, Lender is hereby granted, pursuant to 11 U.S.C. §§ 361(1), 363(e), a postpetition security interest and lien (the "***Replacement Lien***") to secure Lender's prepetition claims equal to the aggregate diminution in the value of Collateral resulting from Debtors' use of the Cash Collateral (whether such diminution is a result of, arises from, or is attributable to, imposition of the automatic stay, any priming of Prepetition Liens, use or disposition of Cash Collateral, or physical deterioration, consumption, use, shrinkage, disposition, or decline in market value or otherwise). The Replacement Lien shall be subject only to valid, enforceable, and perfected liens and security interests in Debtors' assets, as prepetition debtors, which existed on the Petition Date, are not subject to avoidance under the Bankruptcy Code, and which are superior in priority to the Prepetition Liens. The Replacement Lien shall attach to all Debtors' property and assets, of any kind or nature that would constitute "Cash Collateral" under § 363(a) of the Bankruptcy Code if in existence prior to the Petition Date, whether now owned or hereafter acquired, and all proceeds, rents, or profits thereof, which were either subject to Prepetition Liens or acquired because of Debtors' use and/or expenditure of Cash Collateral. The Replacement Lien hereunder shall at all times be senior to Debtors' rights and any estate representative or any subsequent cases or proceedings under the Bankruptcy Code. Any security interest or lien upon the Collateral or Cash Collateral that is avoided or otherwise preserved for the benefit of Debtors' estate under Section 551 or any other provision of the Bankruptcy Code shall be subordinate to the Replacement Lien in such asset.

I-936846.4

7. The Replacement Lien granted to Lender by this Interim Order shall be perfected by operation of law upon execution and entry of this Interim Order by the Court. Lender shall not be required to take any action to validate or perfect such Replacement Lien. Notwithstanding the foregoing, if Lender chooses to file any documents, instruments, or otherwise confirm perfection of the Replacement Lien, Lender is authorized, notwithstanding 11 U.S.C. § 362, to effect such filings and recordations, and all such filings and recordations shall be deemed to have been filed or recorded as of the Petition Date. If Lender chooses to file any documents, instruments, or otherwise confirm perfection of the Replacement Lien, Debtors shall cooperate with Lender and shall execute such additional documents as Lender may require from time to time. The Replacement Lien under this interim order shall be in addition to all liens in all post-petition assets that exist by operation of law under 11 U.S.C. § 552(b).

8. <u>507(b) Superpriority Lien</u>. To the extent that the Replacement Lien is inadequate, Lender shall also have a priority claim to the fullest extent permitted under 11 U.S.C. § 507(b) equal to the aggregate diminution in the value of the Collateral resulting from Debtors' use of Cash Collateral (the "***Superpriority Claim***"), and such claim shall have priority over, and be senior to, all other administrative claims. Any administrative expense paid, including all professional fees, shall be subject to disgorgement to pay the Superpriority Claim.

## MISCELLANEOUS PROVISIONS

9. Debtors and Lender may amend or waive any provision of this Interim Order if such amendment or waiver, in Debtors' and Lender's judgment, is immaterial and nonprejudicial to the rights of third parties. Except as otherwise provided herein, no waiver, modification, or amendment of any provision hereof shall be effective unless set forth in writing, signed by Debtors and Lender, and approved by the Court.

10. <u>Credit Bidding.</u> Any motion seeking relief under 11 U.S.C. § 363 filed shall provide for and allow credit bidding by Lender, whether under 11 U.S.C. § 363(k) or in the case of a sale under 11 U.S.C. § 363(b).

11. <u>Section 506 Waiver; Marshalling and Equities of the Case Waiver.</u> Subject to entry of a final order, Debtors and their successors and assigns, including estate professionals, shall waive application of 11 U.S.C. § 506(c), and no costs or expenses of administration or other charge, lien, assessment, or claim incurred between the Petition Date and the Termination Date shall be imposed against Lender, its claims, or its Collateral under 11 U.S.C. § 506(c) or otherwise, unless, before incurring such costs or expenses: (i) the party proposing to incur such costs or expense shall obtain Lender's prior written consent, or (ii) this Court enters an order allowing such charge under 11 U.S.C. § 506(c). Moreover, Lender shall not be subject to the equitable doctrine of "marshaling" or any similar doctrine regarding the Collateral. Nothing herein shall or shall be deemed to constitute an admission by Lender that its interests are adequately protected under Section 361 of the Bankruptcy Code

12. <u>No Substantive Consolidation.</u> Notwithstanding anything to the contrary herein, this Interim Order shall not constitute a finding of fact or conclusion of law that Debtors respective estates should be substantively consolidated.

I-936846.4

13. <u>No Waiver; Survival.</u>  This Interim Order shall not be construed in any way as a waiver or relinquishment of any rights that any party in interest may have to bring or be heard on any matter brought before this Court.  The terms of this Interim Order and any actions pursuant hereto, including, without limitation, the adequate protection granted hereby, shall survive the entry of any order:  (i) confirming a plan of reorganization; (ii) dismissing this case; (iii) approving any sale under 11 U.S.C. § 363; (iv) converting this case to Chapter 7 of the Bankruptcy Code; (v) withdrawing the reference of this case; and (vi) abstention from handling or retaining jurisdiction over this.

14. Debtors shall serve, by U.S. mail, copies of this Interim Order to:  (i) parties that have filed a request for special notice with this Court; (ii) counsel to Lender; (iii) all creditors who have recorded a financing statement on Debtors' personal property or a lien on any of Debtors' property; (iv) all parties required to be served under Bankruptcy Rule 1007(d); and (v) the UST.

15. A final hearing ("**_Final Hearing_**") shall be scheduled for April 28, 2010, at 11:00 a.m. <u>in Norfolk</u> to consider and determine any objections to this Interim Order.

16. This Interim Order constitutes findings of fact and conclusions of law and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date upon the entry thereof.

17. To the extent any provision of this Interim Order conflicts with the Motion, the Interim Order shall control.

Dated:_____          _____
                                    United States Bankruptcy Judge


WE ASK FOR THIS:

_____/s/ Laura C. Pyle_____
Ross C. Reeves (VSB No. 13628)
Laura C. Pyle (VSB No. 73338)
Willcox & Savage, P.C.
One Commercial Place, Suite 1800
Norfolk, Virginia 23510
757-628-5500 (T)
757-628-5566 (F)
*Proposed Counsel for the Debtors*


SEEN AND AGREED:

_____/s/ Christian K. Vogel_____     (by Laura C. Pyle with permission from
Christian K. Vogel, Esquire              Christian K. Vogel by electronic mail)
LeClairRyan
Riverfront Plaza, East Tower
951 East Byrd Street, Eighth Floor
Richmond, Virginia 23219
-and-
Grant T. Stein, Esquire
Alston & Bird LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, Georgia 30309-3424
*Counsel for Prudential Industrial Properties, LLC*


SEEN AND NO OBJECTION:

_____/s/ Kenneth N. Whitehurst_____     (by Laura C. Pyle with permission from
Kenneth N. Whitehurst, III, Esquire     Kenneth N. Whitehurst by electronic mail)
Office of the U.S. Trustee
Federal Building, Room 625
200 Granby Street
Norfolk, Virginia 23510

## CERTIFICATE OF SERVICE

      I hereby certify that a true and correct copy of the foregoing Order has been endorsed by or served upon all necessary parties in accordance with Local Rule 9022-1.

                                                                   */s/ Laura C. Pyle*
                                                                         Laura C. Pyle

Marsh Hawk / Ford's Colony Country Club
30 day "Cash Needs" Forecast                                        **EXHIBIT A**
April 3 thru May 2nd


### *CASH INCOMING*

| | |
|---|---|
| Withdrawal from Insurance escrow | $6,750 |
| Projected receivables – end March | $193,000 |
| Actual cash / cc – April '09 ($307,000) | |
| Cash / CC Collections – April '10 (increase $10k) | <u>$315,000</u> |

*Projected Revenue*                                                     $514,750

### *EXPENSES*

#### Marsh Hawk

**Payroll**

| | |
|---|---|
| Payroll (April 16, 30) | $192,000 |
| Executive Salaries | $10,000 |
| Sales commissions | $7,500 |
| Daily Tip Repayments – wait staff | <u>$20,000</u> |
|     Payroll Related | $229,500 |

**Inventories**

| | |
|---|---|
| Food and Beverage | $53,000 |
| Merchandise | <u>$39,000</u> |
|     Inventory Required | $92,000 |

**Utilities / Essential Expenses**

| | |
|---|---|
| Health Insurance – Anthem | $3,500 |
| Health Insurance – Delta Dental | $1,700 |
| Health Insurance – Healthkeepers | $11,000 |
| Property Insurance – Davis Garvin | $6,750 |
| Dixie Fuel / Miller Oil – golf carts / maint | $7,000 |
| Garbage Removal / HRUBS / Water | $2,500 |
| Computer Support | $1,500 |
| Bank Fees | $1,000 |
| Uniforms | $1,500 |
| Advertising / Marketing Materials | $3,000 |
| Dominion Power | $11,000 |
| Va. Natural Gas | $3,000 |
| RC Agronomics – fertilizer / seed | $25,000 |
| Cleaning Supplies | $2,000 |
| Postage | $2,500 |
| Repairs & Maintenance (Building / Golf Maint) | $4,000 |
| Telephone / cable / Internet | $2,400 |
| Wine Storage – rent | $1,200 |
| Parking Lot – rent | $3,500 |
| Property tax escrow | $21,250 |
| Sales tax | $15,000 |
| Virginia Linen | $4,000 |
| Virginia handicap Fee (VSGA) | <u>$2,800</u> |
|     Key Operating Expenses | $137,100 |

Lease Payments
| | |
|---|---|
| Textron Golf cart lease | $22,507 |
| GE Capital | $8,571 |
| GMAC | $483 |
| John Deere | $1,231 |
| National City | $581 |
| Turf Equipment | $1,925 |
| Lease Payments | $35,298 |
| | |
| GRAND TOTAL – Marsh Hawk | $493,898 |

Ford's Colony Country Club

Lease Payments
| | |
|---|---|
| GE Capital | $6,650 |
| GMAC | $465 |
| National City | $1,197 |
| Textron | $4,060 |
| Lease Payments | $12,372 |
| | |
| GRAND TOTAL – FCCC | $12,372 |
| | |
| EXPENSES – GRAND TOTAL (both entities) | $506,270 |
| | |
| NET CASH PROJECTED | $8,480 |