**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Newport News Division**

| | | |
|---|---|---|
| In re Marsh Hawk Golf Club, LLC, | ) | Case Number 10-50632 |
| | ) | |
| Debtor. | ) | Chapter 11 |
| | ) | |
| In re Ford's Colony Country Club, Inc., | ) | Case Number 10-50633 |
| | ) | |
| Debtor | ) | Chapter 11 |
| | ) | |
| | ) | CONTESTED MATTER |
| | ) | |

**PRUDENTIAL INDUSTRIAL PROPERTIES, LLC'S**

**(A) NOTICE OF FILING PROPOSED FORM OF BALLOT FOR COMPETING PLANS, REQUEST FOR APPROVAL OF A BALLOTING AND SOLICITATION AGENT, AND OBJECTION TO DEBTOR'S PROPOSED FORM OF BALLOT;**

**(B) RESPONSE AND OBJECTIONS TO THE DEBTORS' FIRST AMENDED DISCLOSURE STATEMENT;**

**(C) REQUEST TO COMPEL THE DEBTORS TO PROVIDE ACCESS TO PRUDENTIAL'S AGRONOMIST, ENGINEER, AND OPERATIONS CONSULTANTS; AND**

**(D) MEMORANDUM OF LAW**

Prudential Industrial Properties, LLC ("**Prudential**") files its (A) Proposed Form of Ballot for Competing Plans and Request for Approval of a Balloting and Solicitation Agent to distribute the competing plans and disclosure statements, receive ballots, and certify ballot results, and Objection to the Debtors' Proposed Form of Ballot (ECF No. 329); (B) Objection to the Debtors' First Amended Disclosure Statement (ECF No. 327); (C) Request to Compel the Debtors to provide access to Prudential's agronomist, engineer, and operations consultants; and (D) Memorandum of Law concerning the Joint Plan of Reorganization (ECF No. 277) (the "**Debtor's Joint Plan**") filed by Marsh Hawk Golf Club, LLC ("**Marsh Hawk**") and Ford's

Colony Country Club, Inc. ("**Ford's Colony**," together with Marsh Hawk, collectively, the "**Debtors**").  In support of thereof, Prudential respectfully shows this Court as follows:

A. **PROPOSED FORM OF BALLOT FOR COMPETING PLANS, REQUEST FOR APPROVAL OF A BALLOTING AND SOLICITATION AGENT, AND OBJECTION TO DEBTORS' PROPOSED FORM OF BALLOT**

1. Attached as Exhibit A hereto is a form of proposed ballot that addresses the reality that there are competing plans in these bankruptcy cases.  To aid the Court in reviewing the substance of the proposed forms of ballots for the competing plans, the substance of proposed Marsh Hawk ballot is reprinted below.

2. As the proposed form of ballot reflects, the creditor bodies in the Marsh Hawk case and the Ford's Colony case are voting on competing plans—one from the Official Committee of Unsecured Creditors (the "**Committee**") and Prudential, and the other from the Debtor in each case.

3. A single ballot should reflect that there are competing plans.  Similarly, the ballot should go to creditors of each separate Debtor for each of the plans, not to both sets of creditors at the same time in the same ballot because that approach is at the least, confusing, and at the worst, misleading.

4. The ballot should reflect the ability to express a preference between the competing plans as contemplated by Section 1129(c).

5. Also, to ensure simultaneous receipt of information and total independence in the distribution of Court authorized solicitation materials and in tabulating votes, the Court should appoint a Balloting and Solicitation Agent to mail the disclosure statements and ballots, receive the ballots, and certify balloting results.  The Balloting and Solicitation Agent would be compensated by the plan proponents equally, and as the Court may determine, could send

simultaneous e-mails at the end of each week in the voting period with copies of the ballots received during that week.

6.     The Balloting and Solicitation Agent would file a ballot certification at the end of the voting process.

7.     For the reasons set forth above, the Court should reject the Debtors' proposed form of ballot.

8.     Before filing this objection and proposed form of ballots, Prudential advised the Debtors of its concerns with their proposed ballots and sent drafts of Prudential's proposed form of ballots.  The Debtors, through counsel, did not reject the proposed ballots, and it would be incorrect to infer from the filing of this objection to the Debtors' ballots that the Debtors have rejected Prudential's proposal just as it would be presumptuous to assume that the Debtors had accepted them.  The Debtors, through counsel, did indicate that their "idea is that there will be a two-page cover sheet with one of the three ballots attached and the creditors of each debtor will only receive the ballot which applies to them."  It is submitted that the ballots should be self contained as proposed herein and that a cover sheet is a problem in and of itself.

9.     The form of ballot for the competing plans should be substantially in the following form (with the appropriate case style) with additional information contained in the actual proposed form of ballot attached as Exhibit A hereto.

**"Please use this Ballot for Creditors Holding Claims Against Marsh Hawk Golf Club, LLC only"**

Marsh Hawk Golf Club, LLC filed a Chapter 11 Plan of Reorganization (the "**Marsh Hawk Plan**") on February 28, 2011 for the Debtor in this case.

The Official Committee of Unsecured Creditors and Prudential Industrial Properties, LLC filed a First Amended Chapter 11 Plan of Reorganization (the "**Committee/Prudential Plan**") on March 25, 2011 for the Debtor in this case.

The Court has approved separate Disclosure Statements with respect to the two Plans (the "Disclosure Statements").  Prudential Industrial Properties, LLC and the Official Committee of Unsecured Creditors are soliciting votes with respect to the Committee/Prudential Plan, and Marsh Hawk Golf Club, LLC is soliciting votes with respect to its Marsh Hawk Plan.  The Disclosure Statement provides information to assist you in deciding how

to vote your ballot. If you do not have a Disclosure Statement, you may obtain a copy for the Marsh Hawk Plan filed from Ross C. Reeves, Esq., Wilcox & Savage, 440 Monticello Avenue, Suite 2200, Norfolk, VA 23510, and for the Committee/Prudential Plan from John D. McIntyre, Esq., Wilson & McIntyre, 500 E. Main Street, Suite 920, Norfolk, Virginia 23510-3889 or Grant T. Stein, Esq., Alston & Bird LLP, 1201 West Peachtree Street, Atlanta, GA 30309. Please refer to the voting instructions enclosed with this Ballot. Court approval of the Disclosure Statement does not indicate approval of either of the Plans by the Bankruptcy Court.

**You should review the Disclosure Statements and the Plans before you vote. You may wish to seek legal advice concerning the Plans and your classification and treatment under the Plans. If you hold claims in more than one class, please indicate that on your ballot.**

**If your ballot is not received by [Solicitation Agent Address], on or before [          ], 2011, by 5:00 p.m. and such deadline is not extended, your vote will not count as either an acceptance or rejection of the Plan.**

**If either of the two Plans is confirmed by the Bankruptcy Court it will be binding on you whether or not you vote.**

**Because there are two Plans, you may vote for either or both and may also express a preference for one or the other, or reject either or both.**

You must vote all of your Claims within a single Class to either accept or reject a Plan. A Ballot that partially rejects and partially accepts a Plan will not be counted. A Ballot that fails to indicate an acceptance or rejection of a Plan, or indicates both an acceptance and rejection of the same Plan, will not be counted as a valid ballot. **As noted above, *YOU MAY ACCEPT ONE OF THE PLANS AND REJECT THE OTHER.***

*The Chapter 11 Plans of Reorganization referred to in this ballot can be confirmed by the Court and thereby made binding on you if it is accepted by the holders of two-thirds in amount and more than one-half in number of claims in each class and the holders of two-thirds in amount of equity security interests voting on the Plan. In the event the requisite acceptances are not obtained, the Court may nevertheless confirm the Plan if the Court finds that the Plan accords fair and equitable treatment to the class or classes rejecting it and otherwise satisfies the requirements of § 1129(b) of the Code.* To have your vote count you must complete and return this ballot.

Item 1. **Classification.** For purposes of voting to accept or reject the Plan, please select your classification and fill in the amount of your claim or interest.

Item 2. **Vote on Plan.** The undersigned hereby votes its claim as set forth in Item 1 to *(Check one box only and indicate amount of claim).*

| *Marsh Hawk Plan* | | *Committee/Prudential Plan* | |
|---|---|---|---|
| *Class 1 – Secured Allowed Claim* | | *Class 1 – Secured Allowed Claim* | |
| | *Prudential Industrial Properties, LLC Amount of Claim $ _____*<br>☐　*Accept the Plan*<br>☐　*Reject the Plan* | | *Prudential Industrial Properties, LLC Amount of Claim $ _____*<br>☐　*Accept the Plan*<br>☐　*Reject the Plan* |
| *Class 1 PREFERENCE* | ☐　*I prefer the Marsh Hawk Plan* | | ☐　*I prefer the Committee/Prudential Plan* |

| Class 2 - Other Secured Creditors | | Class 2 - Other Secured Creditors | |
|---|---|---|---|
| | GE Capital Corp.<br>Amount of Claim<br>$ _____<br>☐　Accept the Plan<br>☐　Reject the Plan | | GE Capital Corp.<br>Amount of Claim<br>$ _____<br>☐　Accept the Plan<br>☐　Reject the Plan |
| | GMAC<br>Amount of Claim<br>$ _____<br>☐　Accept the Plan<br>☐　Reject the Plan | | GMAC<br>Amount of Claim<br>$ _____<br>☐　Accept the Plan<br>☐　Reject the Plan |
| | GMAC<br>Amount of Claim<br>$ _____<br>☐　Accept the Plan<br>☐　Reject the Plan | | GMAC<br>Amount of Claim<br>$ _____<br>☐　Accept the Plan<br>☐　Reject the Plan |
| | James City County Treasurer<br>Amount of Claim<br>$ _____<br>☐　Accept the Plan<br>☐　Reject the Plan | | James City County Treasurer<br>Amount of Claim<br>$ _____<br>☐　Accept the Plan<br>☐　Reject the Plan |
| | John Deere Credit<br>Amount of Claim<br>$ _____<br>☐　Accept the Plan<br>☐　Reject the Plan | | John Deere Credit<br>Amount of Claim<br>$ _____<br>☐　Accept the Plan<br>☐　Reject the Plan |
| | John Deere Credit<br>Amount of Claim<br>$ _____<br>☐　Accept the Plan<br>☐　Reject the Plan | | John Deere Credit<br>Amount of Claim<br>$ _____<br>☐　Accept the Plan<br>☐　Reject the Plan |
| | National City<br>Amount of Claim<br>$ _____<br>☐　Accept the Plan<br>☐　Reject the Plan | | National City<br>Amount of Claim<br>$ _____<br>☐　Accept the Plan<br>☐　Reject the Plan |
| | Turf Equipment Leasing<br>Amount of Claim<br>$ _____<br>☐　Accept the Plan<br>☐　Reject the Plan | | Turf Equipment Leasing<br>Amount of Claim<br>$ _____<br>☐　Accept the Plan<br>☐　Reject the Plan |

| | | | |
|---|---|---|---|
| *Marsh Hawk Plan* | | *Committee/Prudential Plan* | ☐ |
| *Class 2 - Other Secured Creditors* | | *Class 2 - Other Secured Creditors* | ☐ |
| *Class 2 PREFERENCE* | ☐   *I prefer the Marsh Hawk Plan* | | ☐   *I prefer the Committee/Prudential Plan* |
| *Class 3 – General Unsecured Creditors including Golf Club Current and Resigned Members* | ☐ | *Class 3 – General Unsecured Creditors including Golf Club Current and Resigned Members* | ☐ |
| | *Name of Creditor:* _____<br>*Amount of Claim*<br>$ _____<br>☐  *Accept the Plan*<br>☐  *Reject the Plan* | | *Name of Creditor:* _____<br>*Amount of Claim*<br>$ _____<br>☐  *Accept the Plan*<br>☐  *Reject the Plan* |
| *Class 3 PREFERENCE* | ☐   *I prefer the Marsh Hawk Plan* | | ☐   *I prefer the Committee/Prudential Plan* |
| *Class 4 – Equity Interest Holder* | ☐ | *Class 4 – Equity Interest Holder* | ☐ |
| | *Name of Interest Holder:* _____<br>*Amount of Interest*<br>$ _____<br>☐  *Accept the Plan*<br>☐  *Reject the Plan* | | *Name of Interest Holder:* _____<br>*Amount of Interest*<br>$ _____<br>☐  *Accept the Plan*<br>☐  *Reject the Plan* |
| *Class 4 PREFERENCE* | ☐   *I prefer the Marsh Hawk Plan* | | ☐   *I prefer the Committee/Prudential Plan* |

Item 3. **Voter Certification.** By signing and returning this Ballot, the undersigned certifies that it is either (i) the creditor with a claim listed on this Ballot as it pertains to the Plan, or (ii) an authorized signatory for such a creditor and attaches a copy of the document granting such authority, and has full power and authority to vote to accept or reject the Plan. The undersigned also acknowledges that its vote to accept or reject the Plan is subject to all the terms and conditions set forth in the Disclosure Statement.

NAME OF VOTER    _____

SIGNATURE    _____

PRINT OR TYPE NAME    _____

|            |                                              |
|------------|----------------------------------------------|
| **TITLE**  | _____ |
| **ADDRESS** | _____ |
|            | _____ |
|            | _____ |
| **DATE COMPLETED** | _____ |

**THE VOTING DEADLINE IS 5:00 P.M., PREVAILING EASTERN TIME, ON [    ]  [    ].  PLEASE MAKE SURE YOU HAVE PROVIDED ALL INFORMATION REQUESTED BY THIS BALLOT.**

**<u>INSTRUCTIONS FOR COMPLETING BALLOT FOR CREDITORS HOLDING CLAIMS AGAINST MARSH HAWK GOLF CLUB, LCC</u>**

**PLEASE READ AND FOLLOW THE ATTACHED INSTRUCTIONS CAREFULLY.  COMPLETE, SIGN, AND DATE THIS BALLOT AND RETURN IT SO THAT IT IS RECEIVED BY 5:00 P.M., PREVAILING EASTERN TIME, ON [    ] BY [        ] AT THE FOLLOWING ADDRESS:**

[Balloting and Solicitation Agent Address]

*Overnight or hand delivery address*:
_____

Please read and follow these instructions carefully.  Your Ballot must be received by [\_\_\_\_\_] (the "<u>Balloting and Solicitation Agent</u>") at the address set forth below on or before 5:00 p.m. prevailing Eastern time on [    ] (the "<u>Voting Deadline</u>"), or your vote will not be counted.

To have your vote count, you must complete, sign and return the Ballot to the Balloting and Solicitation Agent by the Voting Deadline unless such deadline is extended by the Bankruptcy Court.

This Ballot is not a letter of transmittal and may not be used for any purpose other than to vote on the Plan, and to reflect your election regarding _____ of the Plan.

If you believe you need additional Ballots, please contact the Balloting and Solicitation Agent immediately.

To complete the Ballot properly, you must follow the procedures described below:

(a)  Cast ONE vote to accept or reject each Plan by checking the appropriate box;

(b)  Cast ONE vote to reflect a preference for one of the Plans by checking the appropriate box;

(c)  Sign and date the Ballot.

(d)  If you are completing the Ballot on behalf of another entity, indicate your relationship with such entity and the capacity in which you are signing, and submit satisfactory evidence of your authority to so act (<u>e.g.</u>, a power of attorney or a certified copy of Board resolutions authorizing you to so act);

(e)  Provide your name and mailing address on the Ballot; and

(f)     Return the Ballot to the Balloting and Solicitation Agent on or before the Voting Deadline using the postage-paid-preaddressed return envelope enclosed with such Ballot.


**PLEASE MAIL YOUR BALLOT PROMPTLY.**

**IF YOU HAVE ANY QUESTIONS REGARDING THE BALLOT, OR THE VOTING PROCEDURES GENERALLY, OR IF YOU NEED ADDITIONAL COPIES OF THE BALLOT OR OTHER ENCLOSED MATERIALS, PLEASE CALL THE BALLOTING AND SOLICITATION AGENT AT (        ).**

### (B)     RESPONSE AND OBJECTIONS TO THE DEBTORS' FIRST AMENDED DISCLOSURE STATEMENT

10.     On Sunday, March 27, 2011, and thus before filing the instant submission, Prudential raised two issues with the Debtors' proposed amendments to its Disclosure Statement. One concern will be addressed in the context of confirmation.  The other concern was as follows:

> *On page 7 of the amended Disclosure Statement, the Debtors wrote: "The Court may take the position that the Plan must be accepted by at least one Class of impaired, non-insider Claims against each Debtor . . . ."  I don't think it is the Court that has taken this position.  Prudential clearly has, and I believe the Committee has, but the law as interpreted by the Court is not the "Court's position."  The Court is not a party.  Accordingly, I would ask that you change this clause to reflect this point.*

11.     On Tuesday, March 29, 2011, the Debtors indicated that they would remove the subject language from the Debtors' disclosure statement and will rephrase the clause to read that "A legal dispute exists as to whether the law requires that the Plan must be accepted by at least one Class of impaired, non-insider Claims against each Debtor . . . ."

### (C)     REQUEST TO COMPEL THE DEBTORS TO PROVIDE ACCESS TO PRUDENTIAL'S AGRONOMIST, ENGINEER, AND OPERATIONS CONSULTANTS

12.     As Prudential indicated at the March 16, 2011 hearing, it has now requested that the Debtors provide access to the Debtors' premises, personnel, and documents to several experts.  The specific request was as follows:

Sunday, March 27

Prudential would like to have the experts (agronomist, golf course operations professional, and engineer) I identified at the last hearing scheduled visit the property on April 5 and 6. I understand that Matt has asked Mike Tiernan to get back to him on scheduling and providing some information (noted below). If you can confirm that these days work before noon on Tuesday, it would be appreciated. If you can't, we will file an appropriate motion and request with the Court and bring the issue up at Thursday's hearing.

The information requested is:

- Detailed financial statements, including balances sheet and income statements, for the past three years and budget for the current year.
- A list of the club's physical assets,       most      notably      the course maintenance equipment.
- A breakdown of Ford's Colony's membership by category, membership count, and dues for the past three years. Please include current counts for 2011 as well.
- Copies of the club's membership bylaws and rules.
- A detailed breakdown of course's rounds by category for each of the past three years.
- A list of all employees by position, department, and compensation.
- Summaries of employee benefit plan to include the employer vs. employee contributions for each employee on the plan.

- Copies of advertising, marketing and other selling materials.
- Access to the club's General Manager, Director of Golf, Director of Food & Beverage and Head Course Superintendent for questions regarding their departments.

  I look forward to hearing from you.

Grant T. Stein
Alston & Bird LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, Georgia 30309-3424
(404) 881-7285
(404) 253-8685 (fax)
grant.stein@alston.com (e-mail)

Thursday, March 24

    We have engaged an agronomist, golf course operations
    professional, and engineer to inspect Ford's Colony.

They will need approximately two full days to complete their work.  We would like to schedule the work starting the week of April 4th.  Please let me know whether there are any days that week that do not work for you.

They have provided me with an initial list of items they would like to review.  Some of these we can provide, but most of these I do not have access to. There will be additional items they will need as they complete their reports and I am sure you will accommodate them.

Here is the initial list of requested items:

- Detailed financial statements, including balances sheet and income statements, for the past three years and budget for the current year.
- A list of the club's physical assets, most notably the course maintenance equipment.
- A breakdown of Ford's Colony's membership by category, membership count, and dues for the past three years.  Please include current counts for 2011 as well.
- Copies of the club's membership bylaws and rules.
- A detailed breakdown of course's rounds by category for each of the past three years.
- A list of all employees by position, department, and compensation.
- Summaries of employee benefit plan to include the employer vs. employee contributions for each employee on the plan.
- Copies of advertising, marketing and other selling materials.
- Access to the club's General Manager, Director of Golf, Director of
- Food & Beverage and Head Course Superintendent for questions regarding their departments.

13.     The Debtors have indicated that they will allow the agronomist and engineer on site, but not the operations professional.

14.     The Debtors have not confirmed the requested dates of April 5 and 6, 2011.

15. Prudential submits that the agronomist, golf course operations professional, and engineer are each focused on feasibility under 11 U.S.C. §1129(a)(11). The Court may recall from the stay relief hearings the substantial problems Prudential has with the repairs, maintenance, and capital items that the Debtors have proposed and said are adequate even though the budgets are almost $500,000 below what was previously spent at the golf courses. Prudential's ability to investigate and present cogent evidence on this important economic issue is essential to the Court's consideration of these matters at the upcoming confirmation and relief from the automatic stay hearings.

16. Further, the Debtors have presented to the Court a financial pro forma for the operations of the golf club. Prudential has concerns in many areas, including repair and maintenance, payroll, capital expenditures, and the like. In particular, the operations expert will aid Prudential and the Court in assessing the reasonableness of the Debtors' financial projections and the feasibility of the Debtors' Joint Plan. While the Debtors do have to meet with the operations expert (and the Court can draw all appropriate negative inferences from that lack of cooperation), the operations expert is nonetheless entitled to access to the golf club to be able to investigate the subjects that have been raised with the Court previously and that will be front and center at the confirmation hearing with respect to the Debtors' Joint Plan. The Debtors lack of financial viability and funding will impair the value of Prudential's collateral and therefore injure the entire community. Financial feasibility (or the lack thereof) is a core and key confirmation issue.

17. Accordingly, Prudential requests that the Court direct the Debtors to provide reasonable access to Prudential's agronomist, golf course operations professional, and engineer on April 5 and 6, 2011.

### (D)     MEMORANDUM OF LAW

18.     This Court should deny confirmation for the reasons set forth in Prudential's Objection to Confirmation.  With respect specifically to the Section 1129(a)(10) issue before the court, the Debtors' position must be rejected because the Debtors seek to use joint administration as a tool to abridge the law and Prudential's substantive rights.  Joint administration is a tool of convenience.  The Advisory Committee Note to Rule 1015 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") states that:

> Joint administration as distinguished from consolidation may include combining the estates by using a single docket for the matters occurring in the administration, including the listing of filed claims, the combining of notices to creditors of the different estates, and the joint handling of other ***purely administrative*** matters that may aid in expediting the cases and rendering the process less costly.

Fed. R. Bankr. P. 1015, advisory committee note (emphasis added).  For example, if a bankruptcy case involves a parent entity and nine of its direct and indirect subsidiaries, joint administration obviates the need for debtors and parties in interest to file ten motions in ten separate cases.  The motion is deemed filed in all cases.  But whether a court should bind creditors of each debtor's estate by granting that motion is an entirely different, substantive issue.  Indeed, the basis for the request for relief in that motion must be established as to each debtor.  Stated differently, a debtor cannot use joint administration to override substantive legal requirements, including the requisite hurdles that must be cleared to confirm a plan under Section 1129(a) of the Bankruptcy Code.  *See, e.g., In re H.H. Distributions, L.P.*, 400 B.R. 44, 54 n.15 (Bankr. E.D. Pa. 2009) ("[s]ubstantive consolidation differs from procedural consolidation, more commonly known as joint administration, in that the latter does not [a]ffect the *substantive rights of creditors or their respective debtor estates* but rather is a tool of administrative convenience and cost efficiency.") (emphasis added).

19.     One such hurdle that each non-substantively consolidated Debtor must clear before reaching the question of whether those Debtors can cramdown the Debtors' Joint Plan on a class of dissenting creditors of each separate case is whether each Debtor in each non-consolidated case has an impaired, non-insider class of creditors that vote to accept the Plan. 11 U.S.C. § 1129(a)(10).

20.     The Debtors contend that so long as an impaired, non-insider class of creditors holding claims against Ford's Colony votes to accept the Plan, Section 1129(a)(10) is satisfied, even as the Plan relates to Marsh Hawk's independent estate and separate creditors.

21.     The Debtors' reading of Section 1129(a)(10) would permit Ford's Colony's creditors to have a voice in Marsh Hawk's bankruptcy case, which could ultimately result in the Plan being crammed down on Marsh Hawk's creditors, even if not one single impaired class under the Marsh Hawk Plan voted to accept the Plan.  This is exactly contrary to the Court's ruling after an elongated evidentiary hearing that *denied* the request for substantive consolidation.

22.     Furthermore, the Debtors position makes absolutely no sense under the law.  In the absence of substantive consolidation, even though a plan may be filed for each debtor in an administratively consolidated case, it is deemed filed in each separate case for each separate debtor.  That is why absent an advance ruling on substantive consolidation which the Debtors' fought so long, hard, and unsuccessfully to obtain, the provisions of Section 1129(a)(10) are measured on a debtor by debtor/case by case basis.  Combining dockets and combining notices is not combining cases and therefore, a plan, even a joint plan, is filed in each separate case for purposes of application of Section 1129(a)(10).  This is, of course, what the Order granting joint administration (ECF No. 43) provided when it said that only administrative consolidation was

being granted. Obviously, confirmation of a plan is not an "administrative or procedural" matter; it is one of the most substantive events that can occur in a Chapter 11 bankruptcy case. This significant point is not even glossed over in the cases the Debtors cite – it isn't even mentioned in the rush of those courts to achieve a result instead of to apply the law.

23.    The Debtors' construction of Section 1129(a)(10) ignores the long-standing principle that, absent substantive consolidation or "deemed" substantive consolidation, which this Court has already denied, corporate form must be respected as lenders—like Prudential—lend and transact business with specific corporate entities and, in the event of bankruptcy, receive their distribution from the assets of those separate legal entities. *See, e.g.*, *In re N.S. Garrott & Sons*, 63 B.R. 189, 191 (Bankr. E.D. Ark. 1986) (holding that "[w]hether or not a case is jointly administered has nothing to do with the rights creditors have against each estate, nor the rights and liabilities of one estate to the other.").

24.    First, at a practical level, because of the denial of substantive consolidation, every ounce of value and every potential upside from the ownership of the real estate can accrue only and solely to Prudential for its secured claim and its allowed unsecured claim. While Ford's Colony creditors may have claims against Ford's Colony, they have absolutely no right whatsoever to a nickel out of Marsh Hawk to pay those claims.

25.    Second, from a legal perspective, the Debtors seek to impair Prudential's substantive rights as a creditor of Marsh Hawk under Section 1129(a)(10).

26.    The cases cited by the Debtors, *In re SPGA, Inc.*, slip op., No. 01-02609, 2001 WL 34750646 (Bankr. M.D. Pa. Sept. 28, 2001), *In re Enron Corp.*, No. 01-16034, 2004 Bankr. LEXIS 2549 (Bankr. S.D.N.Y. July 15, 2004), and *JPMorgan Chase Bank, N.A. v. Commc'ns*

*Operating LLC (In re Charter Commc'ns)*, 419 B.R. 221, 229 (Bankr. S.D.N.Y. 2009) are not applicable and should not be followed for the following reasons.

27.     In *SPGA*, SPGA, Inc. and ten of its direct and indirect subsidiaries filed Chapter 11 bankruptcy.  *SPGA*, slip op. at 1.  The debtors had a multi-million dollar syndicated secured credit facility with a "Bank Group" (as defined in *SPGA*) and filed bankruptcy to effectuate a balance sheet restructuring to deleverage the Bank Group debt.  The debtors also had senior unsecured debt held by a group of bond holders referred to as the "Subordinated Bondholders." *Id.* at 22.  Prepetition, the debtors successfully negotiated a workout with the Bank Group, but not with the Subordinated Bondholders.  *Id.*  After several months in bankruptcy, the debtors proposed a joint plan to implement this workout, which provided that the Bank Group would equitize a portion of their claims and accept "paid in kind" notes for $125 million.  *Id.* at 3-4. The plan contained fifty-seven classes of creditors.  *Id.* at 5.  The Subordinated Bondholders objected to the plan, contending that the debtors had failed to establish an impaired accepting class as to each debtor.  *Id.* at 8.  In responding to the Subordinated Bondholders, the debtors cited to a brief previously filed by counsel to the Subordinated Bondholders in another case, in which counsel to the Subordinated Bondholders had argued the exact opposite position.  *Id.* at 15.

28.     The Court held that in order to confirm the plan, the multi-debtor plan only needed one impaired accepting class to satisfy Section 1129(a)(10).  *Id.* at 17.  The equities of the case dictated this result.

> Here, ten of the 11 debtors cannot satisfy section 1129(a)(10).  Each debtor covered by the joint plan has one or more impaired classes. **However, for each debtor other than Grove Worldwide[,] LLC, the impaired classes <u>are to receive no distribution</u>**.  Each of these classes is deemed to reject the plan, without the need for a vote.  **The deemed rejections eliminate the possibility of a consenting impaired class for**

> *these ten debtors on a stand-alone basis*. Nor can these debtors use the
> consenting impaired class in Grove Worldwide, LLC. The debtors
> requested only an administrative consolidation of their cases. They
> affirmatively rejected the notion of a substantive consolidation, and the
> plan, on its face, treats each debtor as a separate entity.

*Id.* at 11 (emphasis added) (citations omitted). Thus, each debtor could not satisfy Section

1129(a)(10) absent substantive consolidation, which the debtors had decided to forego.

29. In explaining its ruling, the *SPGA* court stated:

> I agree with Debtors' position that in a joint plan of reorganization it is not
> necessary to have an impaired class of creditors of each Debtor vote to
> accept the Plan. *While I do not pretend to fully understand the corporate
> structure of these debtors before and after the reorganization, it is clear
> that the purpose of these filings was a financial restructuring of the
> Debtors*. The Debtors were carrying too much debt on their balance
> sheets. *All creditors were to be paid in full except the Bank Group and
> the Subordinated Bondholders*. The Debtors made concerted efforts to
> conduct business as usual and the evidence indicated that the Chapter 11
> filings did not have the adverse impact feared by the Debtors. There is
> one plan of reorganization. While it is true that various corporations are
> affected by the Plan, the business of the Debtors remains the same.
> *Whether these Debtors were substantively consolidated or jointly
> administered would have no adverse affect [sic] on the Subordinated
> Bondholders.* The only truly substantive issue in this case is whether the
> Bank Group is getting more than 100%.

*Id.* at 16-17 (emphasis added). It is easy to miss the court's point and the reasoning underlying

its ruling. The Subordinated Bondholders argued that the only way the debtors could have

satisfied Section 1129(a)(10) was if the court had ordered substantive consolidation. In response

to this argument, the court—after explaining that it did not truly understand the corporate

structure prepetition and corporate structure post-confirmation—rests its ruling not on a rule of

law, but on equitable principles. The court explained that the debtors were a consolidated

corporate enterprise with ten subsidiaries and a large, syndicated secured credit facility that must

be restructured. The court recognized that all unsecured creditors would be paid in full, other

than (a) the Bank Group, which reached a consensual plan with the debtors, and (b) the

Subordinated Bondholders, which were using Section 1129(a)(10) to create a "holdout" dilemma. Faced with this holdout dilemma, one sentence explains the entirety of the court's holding: **"Whether these Debtors were substantively consolidated or jointly administered would have no adverse affect [sic] on the Subordinated Bondholders."** *Id.* at 17 (emphasis added). In short, the Court found that even if it had ordered substantive consolidation, substantive consolidation would have had no adverse effect on the Subordinated Bondholders. So for the Subordinated Bondholders to use Section 1129(a)(10) to creatively attempt to block confirmation of a plan to which almost all creditor constituents had agreed would not stand in the court's view. *See id.* The equities of this case and the desire to avoid the holdout problem caused the court to disregard the purpose of Section 1129(a)(10) and the corporate separateness doctrine. Is that a correct way to apply the law?—no. Are the facts in *SPGA* the same facts as in this case?—not even close.

30. Importantly, as noted above, because of the denial of substantive consolidation, every ounce of value and every potential upside (however speculative) from the ownership of the Marsh Hawk real estate can accrue *only and solely* to Prudential for its secured claim *and its allowed unsecured claim*. While Ford's Colony creditors may have claims against Ford's Colony, they have absolutely no right whatsoever to a nickel out of Marsh Hawk to pay those claims. This result is what Textron bargained for and Prudential obtained by taking an assignment of the note.

31. *Enron* involved 177 jointly administered debtors. The distinguishing factor in *Enron* was that the plan *incorporated a global compromise that substantively consolidated the Enron entities*. *See Enron*, 2004 Bankr. LEXIS 2549, at *235 (holding that "by virtue of the *substantive consolidation component of the global compromise*, the requirements of section

- 17 -

1129(a)(10) are satisfied as to each of the Debtors lacking an impaired accepting class because those Debtors are part of the global compromise embodied in the Plan.") (emphasis added).

32. ***<u>There was a specific rejection of the Debtors' request for substantive consolidation in this case after a multi-day evidentiary hearing</u>, and there is no compromise that has been achieved by the Debtor with any constituency, and certainly not its economically largest constituent—Prudential.***

33. When a court holds that substantive consolidation is an appropriate remedy, it will treat creditors' claims, which they hold against separate debtors within a large conglomerate, as claims against one consolidated entity. *See, e.g.*, *In re Owens Corning*, 419 F.3d 195, 205 (3d Cir. 2005). Because of substantive consolidation, there is one pool of assets to which all liabilities attach, and therefore, so long as there is one impaired, non-insider accepting class in a plan that effects a substantive consolidation, Section 1129(a)(10) is satisfied. Judge Gonzalez held that because the plan in *Enron* effected a substantive consolidation of the *Enron* entities, Section 1129(a)(10) was not a hurdle to confirmation and measured the legal standard on a per-plan basis as opposed to a per-debtor basis. *See Enron*, 2004 Bankr. LEXIS 2549, at *235. Whether or not this was legal error, it certainly was based on facts not present here and was *dicta* because substantive consolidation rendered that ruling moot. In *Enron*, the debtors also had enough impaired accepting classes for 96 of the 177 debtors measured on a per-debtor, not per-plan, basis. *Id.* at 236.

34. Significantly, as noted at the March 16, 2011 hearing, the willingness of some bankruptcy courts to disregard corporate separateness and the entitlement of separate creditors of separate debtors when faced with a bona fide assertion of those rights is frowned upon by the New York District Court as established in *ACC Bondholder Group v. Adelphia Commc'ns Corp.*

(*In re Adelphia Commc'ns Corp.*, 361 B.R. 337, 352-55 (S.D.N.Y. 2007) (Scheindlin, J), in which the Court granted a stay pending appeal of the confirmation of the plan in *Adelphia*. A copy of the *Adelphia* decision is attached hereto as Exhibit B.

35.     The final case upon which the Debtors rely is *JPMorgan Chase Bank, N.A. v. Commc'ns Operating LLC (In re Charter Commc'ns)*, 419 B.R. 221, 229 (Bankr. S.D.N.Y. 2009), which cites to and relies on *SPGA* and *Enron*. *See Charter*, 419 B.R. at 266. Bankruptcy Judge Peck began his decision in *Charter* as follows: "These are perhaps the largest and most complex prearranged bankruptcies ever attempted, and in all likelihood rank among the most ambitious and contentious as well." *Id.* at 230. As in *Adelphia*, large and complex cases do not justify disregarding a plain statute and its structure.

36.     When Section 1129(a)(10) was enacted as part of the Bankruptcy Reform Act of 1978, it sought to address the inequities of cramming down secured lenders in single asset real estate cases and to make plans that were only supported by the debtor much harder to confirm. *In re Polytherm Indus., Inc.*, 33 B.R. 823, 835 (Bankr. W.D. Wis. 1983). Judge Crabb in *In re Polytherm Industries, Inc.* aptly stated,

> Ideally, a reorganization plan will be the product of debtor-creditor cooperation and will serve both sides' interests. However, if the debtor and creditors fail to agree on the reorganization plan as signified by dissension of creditor classes, the cramdown device may permit confirmation of the plan if the plan adequately protects the dissenting classes according to 11 U.S.C. § 1129(b). Section 1129(a)(10) creates an impediment to resort to the cramdown authority and, as such, it can frustrate a debtor's interest in adopting a given plan. However, if no class of creditors agrees to the plan, it would not be equitable to impose acceptance of the plan upon creditors by enforcing the debtor's interest in confirmation of the plan through the cramdown authority. ***The point is, if no impaired class accepts the plan, the debtor has failed to negotiate effectively with its creditors in devising a reorganization plan. I find nothing in the Bankruptcy Reform Act to indicate that Congress intended that bankruptcy courts could saddle creditors with a stake in a***

> *reorganized corporation under a plan that had received no acceptances from impaired classes of creditors*.

33 B.R. at 835.

37. The provisions of Section 1129(a)(10) must also be read in the context of the entirety of Section 1129. For example, the *best interests of creditors test* of Section 1129(a)(7) makes it clear that the statutory structure applies to a debtor by debtor measurement.

38. It provides as follows:

> **1129(a)(7)** With respect to ***each impaired class of claims or interests***—
>
> > **(A)** ***each holder of a claim*** or interest of such class—
> >
> > > **(i)** has accepted the plan; or
> > >
> > > **(ii)** will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain **if the debtor were liquidated under chapter 7** of this title on such date;

39. It is thus clear that the *best interests of creditors* test does not measure the liquidation analysis on a consolidated basis where substantive consolidation has been rejected after an evidentiary hearing. It is measured on a per-debtor basis which, as noted above, is exactly what led to the stay pending appeal being granted in *Adelphia* and is currently an issue in the *Lehman Brothers* bankruptcy cases where non-consolidated debtors will have different recoveries.

40. Similarly, the feasibility test of Section 1129(a)(11) is measured on a per-debtor basis. It provides in relevant part as follows;

> **1129(a)(11)** Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, ***of the debtor*** or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan.

41.     Again, the provisions of Section 1123 make it clear that measuring compliance with confirmation standards must be done on a debtor-by-debtor basis.  Section 1123(a)(5) to which the Court referred at the September 16, 2011 hearing, states that a plan shall:

> **1123(a)(5)** provide adequate means for the plan's implementation, such as—
>
> > **(A)** retention by the debtor of all or any part of the property of the estate;
> >
> > **(B)** transfer of all or any part of the property of the estate to one or more entities, whether organized before or after the confirmation of such plan;
> >
> > **(C)** merger or consolidation of the debtor with one or more persons;

42.     The structure that allows a plan to provide for merger or consolidation has to be read together with Section 1129(a)(10), and if the creditors of one debtor oppose consolidation, that estate cannot be subsumed in an involuntary confirmation of an involuntary consolidation or merger, but that is the result of the decisions that would measure Section 1129(a)(10) on a per-plan instead of per-debtor basis.

WHEREFORE, Prudential respectfully requests that the Court enter an order approving the proposed form of ballot submitted by Prudential, appointing a Balloting and Solicitation Agent, ordering the Debtors to provide access to Prudential's agronomist, engineer, and operations consultants, and granting Prudential such other and further relief as the Court deems just and appropriate.

Dated this 29th day of March, 2011.

/s/ Christian K. Vogel
Counsel

Bruce H. Matson (Va. Bar No. 22874)
Christopher L. Perkins (Va. Bar No. 41783)
Christian K. Vogel (Va. Bar No. 75537)
Riverfront Plaza, East Tower
951 East Byrd Street, Eighth Floor
Richmond, Virginia 23219
(804) 783-7550 Direct

Christopher.Perkins@leclairryan.com
Christian.Vogel@leclairryan.com

and

Grant T. Stein (*pro hac vice*)
Jonathan T. Edwards
1201 West Peachtree Street
Atlanta, Georgia 30309-3424
grant.stein@alston.com
jonathan.edwards@alston.com

*Attorneys for Prudential Industrial Properties, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 29th day of March, 2011, a true and accurate copy of the foregoing was electronically filed with the Clerk of the Bankruptcy Court for the Eastern District of Virginia, Newport News Division, using the CM/ECF system, which thereby caused the above to be served electronically on all registered users of the ECF system that have filed notices of appearance in this matter, including counsel for the committee, Debtors' counsel, and the Office of the U.S. Trustee.

/s/ Christian K. Vogel

Counsel